UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RISSMAN, HENDRICKS & OLIVERIO, LLP,    )
                                       )
         Plaintiff,                    )
    v.                                 )
                                       )   CIVIL ACTION
MIV THERAPEUTICS, INC., MIV SCIENTIFIC )   NO. 11-10791-MLW
HOLDINGS LTD, BIOSYNC SCIENTIFIC       )
PVT (a/k/a MIV INDIA), ALAN P. LINDSAY,)
CHRIS XUNAN CHEN and PATRICK McGOWN,   )
                                       )
         Defendants.                   )

**MEMORANDUM OF DECISION AND ORDER ON
PLAINTIFF'S MOTION FOR A PROTECTIVE ORDER**

October 20, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

This litigation involves a claim by the plaintiff law firm for payment for legal services rendered and expenses paid on the defendants' behalf in connection with, inter alia, patent prosecutions, as well as claims that the defendants have engaged in fraudulent conduct to hide assets which should have been available to pay these fees and expenses, which total in excess of $400,000.00. This matter is before the court on the plaintiff's "Emergency Motion for Protective Order Restraining Defendant Alan Lindsay From Threatening Fact Witnesses Expected to Testify in This Case" (Docket No. 34). By this motion, the plaintiff law firm is seeking "a protective order restraining and enjoining the defendant Alan Lindsay from threatening any person who is or may be a potential witness

in this case including specifically the former officers and employees of the corporate defendants, Dr. Mark Landy and Anthony Huston, both of whom have personal knowledge of facts pertinent to proof of one or more counts of this case." Mot. at 1. As detailed herein, the motion is ALLOWED IN PART AND DENIED IN PART, and a protective order shall be issued in the form detailed below.

## II. STATEMENT OF FACTS

Members of the plaintiff law firm, John A. Rissman, M. Lawrence Oliverio, and Jay A. Stelacone, have submitted detailed affidavits reciting conversations they had with Anthony Huston and Dr. Mark Landy, in which these witnesses stated that they had been threatened with financial ruin by the defendant Alan Lindsay or his representative if they participated in this litigation. It is undisputed that Mr. Huston and Dr. Landy are likely to be critical witnesses in this litigation.

Specifically, but without limitation, Attorney Oliverio has submitted an affidavit dated September 26, 2011 in which he states, in relevant part:

> Several weeks ago, I received a telephone call from Dr. Mark Landy who was at certain times relevant to the counts in this suit, an officer of at least one of the named defendants, MIV Therapeutics, Inc. In my conversation with Dr. Landy he advised me that Mr. Lindsay had demanded that he cease any further discussions with the Rissman Firm, that he refuse to provide any further assistance or information to the Rissman Firm about Mr. Lindsay, or that Mr. Lindsay would use every dollar of his bottomless deep pocket of monetary resources to bankrupt Mr. Landy including instigating litigation against Dr. Landy....

Oliverio Decl. (Docket No. 34) at ¶ 2.

Attorney Rissman has submitted an affidavit dated September 19, 2011, and a supplemental affidavit dated October 7, 2011, in which he states, in relevant part:

> Over the past several months I have had multiple telephone conversations with Dr. Mark Landy (formerly President & CEO of MIVT), as well as Mr. Anthony Huston (formerly Vice President of Business Development & Investor Relations for MIVT), regarding MIVT. On the majority of such occasions, these contacts were initiated by either Dr. Landy or Mr. Huston. On limited occasions, I received e-mails from them regarding MIVT. During these conversations, the most recent of which took place on or about September 7, 2011, Dr. Landy and Mr. Huston each made the following comments to me, namely:
>
> ... Indicating that each of them had been threatened by Mr. Lindsay to cease any further discussions with the Rissman Firm, and to refuse to provide further assistance to the Rissman Firm, or they would each face considerable difficulties in the future. Dr. Landy told me that Mr. Lindsay threatened him more than once that he would sue him and exert every possible effort against Dr. Landy, using his considerable wealth, until Dr. Landy was effectively bankrupted, if Dr. Landy cooperated in any way with the Plaintiff in this suit against the Defendants, especially Mr. Lindsay. Mr. Huston told me that he had been told that Mr. Lindsay had instructed his nephew, Denis Corin, to relate the same threat to Mr. Huston, and that the threat of litigation into submission was made against Mr. Huston on earlier occasions [by Mr. Lindsay and Mr. Corin].

Rissman Aff. (Docket No. 34-1) at ¶ 4; Rissman 2d Aff. (Docket No. 40-3) at ¶ 38.

Attorney Stelacone has submitted an affidavit dated October 7, 2011 in which he details a conversation between Messrs. Rissman and Huston on September 7, 2011, which Attorney Stelacone listened in on. Stelacone Aff. (Docket No. 40) at ¶ 2. In this conversation Mr. Huston informed them that Dr. Landy had told him that he had been "threatened by Alan Lindsay to not assist the Rissman Firm with regard to this litigation

at the risk of Mr. Lindsay causing financial ruin" for Dr. Landy. Id. at ¶ 3. In addition, Mr. Huston had been contacted by Denis Corin (Mr. Lindsay's nephew), who told Mr. Huston, "I hope you haven't said anything to John Rissman about the lawsuit or company affairs." Id. Attorney Stelacone also sat in on a telephone conversation between Attorney Rissman and Dr. Landy on September 7, 2011. Id. at ¶ 4. During that call "Dr. Landy confirmed that Mr. Lindsay had threatened him . . . with a lawsuit that would ruin him . . . financially if he cooperated in any way with the Rissman Firm regarding this litigation." Id.

Mr. Lindsay denies making any of the statements attributed to him by the plaintiffs. He has submitted an affidavit dated October 6, 2011. Lindsay Aff. (Docket No. 37-1). Therein, he contends that he resigned as the president and CEO of MIV Therapeutics on December 31, 2007, and that while he remained on the Board of Directors as a non-Executive Chairman until February 2010, in that role he did not have any authority to bind MIV to any contracts and was not involved with the day-to-day management of MIV. Id. at ¶¶ 2-3. He also categorically denies making the statements at issue. Thus, as Mr. Lindsay attests:

> While I have spoken with Dr. Landy since the initiation of this litigation, I never threatened Dr. Landy. Likewise, I never instructed Denis Corin to relate threats to Mr. Huston. These allegations are pure fabrication.
>
> Mr. Huston has denied making such allegations against me. See attached ex. 1. And Dr. Landy sent me an email he sent to Mr. Oliverio stating that the allegations made in a previous pleading were not factually accurate. See ex. 2.

-4-

Id. at ¶¶ 16-17. The referenced exhibit 1 is a copy of some messages, though its provenance is unclear. It is labeled "Copy of text messages from A. Huston" dated September 25, 2011. It states:

> As I said to you yesterday alan I never said those things and really it doesn't matter because I never signed anything stating I said anything ... it's just hearsay - forget about it! If I had agreed to back up his claims that would be a different story - alan my family and I have lost millions because of how poorly this company was run - I am working my ass off to get back financially what we lost so I don't have time for this and I trust you understand as you still have millions and I lost mine ... the least of my worries is what Jr is saying to be honest because if I get called into court I would deny it - simple! What I need is for miv to get back trading again so we get hope back in our lives ....

(Internal punctuation omitted). The attached exhibit 2 consists of a series of emails which show Attorney Oliverio sending Dr. Landy a draft pleading relating to the plaintiff's motion to remand the instant action to state court on July 12, 2011 (although the pleading is not attached to exhibit 2), and asking Dr. Landy "if the facts as stated are accurate?" Dr. Landy replies on the same day that to the best of his knowledge, "the allegations highlighted in yellow against Lindsay and McGowan during my tenure at MIV (April 2006 to December 2009) are not factual." On September 20, 2011, Dr. Landy sends Mr. Lindsay an email stating, "This was my reply to the email below and I have included the referenced document. Lawrence Oliverio I believe is a partner at John's Firm." There is no indication as to what motivated Dr. Landy to communicate with Mr. Lindsay or to send this email chain to Mr. Lindsay.

In response to Mr. Lindsay's affidavit, Attorney Rissman filed his second affidavit dated October 7, 2011. (Docket No. 40-3). Therein, Attorney Rissman challenges Mr. Lindsay's statements concerning his lack of involvement with MIV. Thus, Attorney Rissman details what he understands to be Mr. Lindsay's continued involvement in efforts to obtain financing for MIV after December 31, 2007, his continued involvement in reviewing invoices for legal services rendered by the plaintiff law firm, and his continued assurances to the plaintiff law firm that it would be compensated for the work it had done. See, e.g., ¶ 10 & Ex. C (listing 54 strategy meetings requested and/or attended by Lindsay); ¶ 18 (legal fee budgets sent to Lindsay); ¶ 23 (Lindsay's involvement in hiring potential consultant in 2009); ¶ 24(l) (instructions to plaintiff in 2010 to send all invoices to Lindsay); ¶ 26 (3/15/10 email from Mr. Huston to Attorney Rissman stating that "Alan" (Lindsay) had requested that Mr. Huston set up a conference call between Attorney Rissman and Chris Chen, and acknowledging that outstanding amounts were due to the firm).

During oral argument on the motion for a protective order, which was held on October 11, 2011, the plaintiff submitted emails dated October 6, 2011 from Mr. Huston to Attorney Rissman, which indicated that Mr. Lindsay was in communication with Mr. Huston. Thus, Mr. Huston sent an email to Attorney Rissman at 10:35 a.m., in which he stated:

> Alan [Lindsay] called me very upset saying that I told you a bunch of lies and that you gave a sworn affidavit to him. Is this true? I told

> him that you would never do that. Please let me know if this is true
> and if it is you need to know that I will NOT stand behind it.

A few hours later Mr. Huston emailed Attorney Rissman again, stating:

> Any allegations that you have stated in your affidavit regarding
> myself are untrue and I will NOT stand behind them! Please remove
> me from your lawsuit.

At the conclusion of oral argument, Mr. Lindsay was asked to propose a stipulation he would be willing to abide by, without the need for a court order. He did propose a stipulation on October 12, 2011. Consistent with this court's order, he did not seek prior approval of the plaintiffs, before filing his proposed stipulation, and he did not admit any liability in his proposal. The plaintiffs objected to his proposal. Since there was no agreement, this court has decided the pending motion.

Additional facts will be provided below.

### III. ANALYSIS

#### A. Personal Jurisdiction

As an initial matter, Mr. Lindsay contends that this court lacks personal jurisdiction over him and that, consequently, it cannot enter a protective order. He has filed a motion to dismiss for lack of personal jurisdiction, which is presently pending before the District Judge. Briefing on that motion is extensive and ongoing.

It would not be appropriate for this court to pre-judge the merits of the motion to dismiss. For present purposes, however, the plaintiff has put forth sufficient facts to establish a *prima facie* case of specific jurisdiction over Mr. Lindsay. "[D]ue process

requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' . . . In a contract case, we evaluate the parties' 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' to determine whether the defendants purposefully established minimum contacts." Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 52 (1st Cir. 2002) (quoting Int'l Shoe v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945), and Burger King Corp. v. Rudzewicz, 471 U.S. 462, 479, 105 S. Ct. 2174, 2185, 85 L. Ed. 2d 528 (1985)) (additional citations omitted). "The Supreme Court, speaking on the subject of specific personal jurisdiction in contract cases, has 'emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Id. at 61 (quoting Burger King, 471 U.S. at 473, 105 S. Ct. 2182) (additional citations omitted). If, as the plaintiff alleges, Mr. Lindsay participated in the hiring of the plaintiff law firm, frequently communicated with the attorneys in Massachusetts, hired them to do work in Massachusetts, and is liable personally for the bills incurred, there is a basis for this court's assertion of personal jurisdiction. See Daynard, 290 F.3d at 60-62.

Moreover, the plaintiff has alleged that Mr. Lindsay engaged in an extensive course of conduct of sending false and misleading representations to the attorneys in

-8-

Massachusetts regarding the status of the over-due account, along with promises to pay. The attorneys allege that they relied on these misrepresentations in continuing to perform legal work and in advancing additional funds. "Massachusetts courts have found that an intentional misrepresentation made in or sent into Massachusetts, for the purpose of inducing the plaintiff's reliance, constitutes an act within the Commonwealth." Cherin v. Cherin, 72 Mass. App. Ct. 288, 294 n.9, 891 N.E.2d 684, 688 n.9 (2008), and cases cited. Under such an analysis, the plaintiff has established a *prima facie* case of personal jurisdiction sufficient for this court to address the merits of the claim for a protective order.

### B. Standard of Review

The parties are not in agreement as to the appropriate standard to be applied to the emergency motion for a protective order. While the defendant contends that the plaintiff must meet the standard for a protective order under Fed. R. Civ. P. 65, the plaintiff argues that it is seeking "a protective order, issued pursuant to the inherent equitable powers of the court to prevent abuses, oppression, and injustices." See Disability Rights N.J., Inc. v. Velez, No. 10-0950 (DRD), 2011 WL 2937355, at *3 (D.N.J. July 19, 2011) (unpub. op). "When deciding a motion for a preliminary injunction, a district court weighs several factors: '(1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest.'" Boston Duck Tours, LP v. Super Duck

Tours, LLC, 531 F.3d 1, 11 (1st Cir. 2008) (quoting United States v. Weikert, 504 F.3d 1, 5 (1st Cir. 2007)). In contrast, the plaintiff contends that the appropriate standard is that provided in Fed. R. Civ. P. 26(c) relating to protective orders in the context of discovery, pursuant to which the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]"

This court agrees that "[w]hile some forms of witness intimidation or document destruction doubtlessly necessitate injunctive relief under Rule 65, protective orders are also an appropriate vehicle to prevent interference with potential witnesses." Velez, 2011 WL 2937355, at *4 (discussing Ben David v. Travisono, 495 F.2d 562, 564 (1st Cir. 1974) (protective order prohibiting witness intimidation appropriate upon a finding "that the plaintiffs reasonably fear retaliation and that the court's fact-finding may be materially impaired unless there is provided the tangible protection of a suitable court order.")). In the instant case, given the allegations of interference with witnesses, it would be appropriate for this court to exercise its inherent equitable powers to ensure full and fair proceedings. Nevertheless, in light of the defendant's insistence that the preliminary injunction standard applies, this court has considered the Rule 65 factors in ruling on the plaintiff's motion. This court concludes that, regardless whether the standard is one of good cause or that needed for a preliminary injunction, a protective order is appropriate.

As an initial matter, the defendant contends that the plaintiff has not put forth any "reliable evidence supporting its need for an injunction against Mr. Lindsay." Defs. Opp.

(Docket No. 37) at 3.  This court disagrees.  The attorneys have submitted detailed affidavits concerning direct conversations they contend they had with Dr. Landy and Mr. Huston, in which these individuals stated that Mr. Lindsay had threatened to drag them through litigation and cause them serious financial harm if they cooperated with the law firm.  While the plaintiff has not submitted supporting affidavits from these witnesses, that would not be surprising if, in fact, they were being threatened.  The attorneys' affidavits, while certainly not conclusive, constitute reliable evidence to support the plaintiff's contention that it is likely to prevail on its claim that the witnesses were threatened.

The emails submitted by both parties establish that Mr. Lindsay had a number of conversations with Dr. Landy and Mr. Huston concerning whether or not they were cooperating with the plaintiff, which supports the plaintiff's contention that these conversations were taking place.  The emails also indicate that, as a result of those conversations, the potential witnesses felt it important to disavow any involvement with the plaintiff's pleadings.  This is consistent with the plaintiff's description of events.  Further, at least Mr. Huston acknowledged to Mr. Lindsay that he had nowhere near the financial resources that Mr. Lindsay had, and that he was concerned about the financial impact litigation might have on him.  This also is consistent with the plaintiff's representations concerning Mr. Huston's fears of being financially ruined if he cooperated.  In short, the emails are not inconsistent with the attorneys' affidavits.  While further discovery may establish that the plaintiff's fear that the witnesses are being threatened is

unfounded, the plaintiff has put forth sufficient reliable evidence to establish at this point that it is likely to succeed on its claim.

As to the other factors considered in connection with a motion for a preliminary injunction, they all weigh in favor of granting a protective order. If, in fact, witnesses are being threatened and are prepared to change their testimony accordingly, there is no question that the harm would be irreparable. Since there is no reason why Dr. Lindsay needs to communicate with these potential witnesses, other than through his counsel, issuing an injunction will be less of a burden on the defendant than denying the injunction would burden the plaintiff. Finally, the issuance of an injunction would not have significant impact on the public interest other than to remove doubt about the voluntariness of the testimony that these witnesses eventually give. Therefore, whether this court applies a "good cause" standard or a Rule 65 standard, a protective order is warranted.

### C. Scope of the Protective Order

Plaintiffs have proposed that the court enter an order that:

> Alan Lindsay shall have no contact with Mark Landy, Anthony Huston or any other person who he has reason to believe is providing information to plaintiff regarding this case other than through his counsel of record in this action.

This court finds that the proposed order is too broad in that there is no evidence that Mr. Lindsay has attempted to communicate with any other witnesses in this case. On the other hand, this court finds that the proposed order does not address the situation where a third person, such as Denis Corin, may become involved in communications with the

potential witnesses. Therefore, after consideration of the record and the parties' proposals,[1] it is hereby ORDERED as follows:

> Alan Lindsay shall not communicate personally with, or cause a third party (other than counsel) to communicate on his behalf with, Mark Landy or Anthony Huston while this matter is pending. Nothing herein shall limit or restrict the right of Alan Lindsay's counsel to communicate with Anthony Huston or Mark Landy. In addition, nothing herein shall prohibit Alan Lindsay from attending the depositions of Anthony Huston or Mark Landy, provided, however, that nothing herein shall preclude the plaintiff from filing another motion seeking to restrict Mr. Lindsay's attendance at the depositions if it deems it appropriate.

This order is sufficiently narrow so that it addresses the plaintiff's concerns without unduly burdening the defendant. Moreover, it is sufficiently clear so that everyone can understand what behavior is being prohibited.

IT IS SO ORDERED.

                                                     / s / Judith Gail Dein
                                                   Judith Gail Dein
                                                   U.S. Magistrate Judge

---

[1] As noted above, Mr. Lindsay has submitted a proposed stipulation in accordance with this court's order. However, as made clear during argument, this court will not seek to hold Mr. Lindsay to the terms of the proposed stipulation since there was no agreement between the parties. The court, however, has considered what Mr. Lindsay was willing to agree to in fashioning the protective order.