UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
RISSMAN HENDRICKS & OLIVERIO,      )
LLP f.k.a. RISSMAN JOSBE           )
HENDRICKS & OLIVERIO, LLP          )
f.k.a. KUDIRKA & JOBSE, LLP,       )
          Plaintiff,               )
                                   )
          v.                       )
                                   )   C.A. No. 11-10791-MLW
MIV THERAPEUTICS INC., MIV         )
SCIENTIFIC HOLDINGS, LTD,          )
BIOSYNC SCIENTIFIC PVT, ALAN P.    )
LINDSAY a.k.a ALAN LINDSAY,        )
PATRICK MCGOWAN, and CHRIS         )
XUNAN CHEN a.k.a. CHRIS CHEN,      )
          Defendants               )
```

MEMORANDUM AND ORDER

WOLF, D.J.                                    September 28, 2012

I. INTRODUCTION

    This is an action brought by plaintiff Rissman, Hendricks,

& Oliverio, LLP ("Rissman") against defendants MIV Therapeutics,

Inc. ("MIV"), MIV Scientific Holdings Ltd., Biosync Scientific PVT,

Alan P. Lindsay, Patrick McGowan, and Chris Xunan Chen. Rissman, a

Massachusetts law firm, alleges that defendants owe it $416,309.00

for legal services provided to MIV between May 29, 2008 and

February 7, 2011.

    The case was originally brought in the Superior Court of the

Commonwealth of Massachusetts. It was removed to the United States

District Court on May 5, 2011. Plaintiff's Complaint asserted a

variety of state law claims against the defendants, including

breach of contract, fraud, unjust enrichment, breach of the

1

covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, and violation of the Massachusetts Consumer Protection Act, Mass. G. L. c. 93A, as well as violations of several federal statutes.

In December 2011, separate and final default judgments in the amount of $542,575.17, including principal and interest, were entered against four of the defendants: MIV, MIV Scientific Holdings, Biosync Scientific PVT, and Chen (collectively, the "defaulted defendants"). Plaintiff dismissed all remaining claims against these defendants except for two counts seeking injunctive relief to prevent the defaulted defendants from liquidating a variety of assets until the default judgments were paid. Plaintiff also dismissed all claims against defendant McGowan.

Lindsay, a former corporate officer and member of the board of directors of MIV, has filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (5) (the "Motion"). Lindsay contends that the court lacks personal jurisdiction over him both under the Massachusetts long-arm statute, Mass. G. L. c. 223A, §3, and the requirements of Due Process Clause of the United States Constitution. He also asserts that he was not properly served with process by the plaintiff. For the reasons set forth in this Memorandum and Order, the Motion is being denied.

II. LEGAL STANDARD

 A. Prima Facie Standard.

 Once a defense of lack of personal jurisdiction has been raised, the plaintiff has the burden of showing that the court has personal jurisdiction over the defendant. See Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010); Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002); Newman v. European Aeronautic Defence & Space Co. Eads N.V., 700 F. Supp. 2d 156, 159 (D. Mass. 2010).

 District courts in the First Circuit may require a plaintiff to satisfy one of three standards in establishing that personal jurisdiction exists: a prima facie showing of facts essential to establishing jurisdiction; a likelihood of the existence of each fact necessary to support personal jurisdiction; or a preponderance-of-the-evidence standard. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145-46 (1st Cir. 1995); Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 674-78 (1st Cir. 1992); see also Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). The prima facie standard is the most commonly used and is appropriate where a case does not involve materially conflicting versions of the facts. See Foster-Miller, 46 F.3d at 145-46; see also Adelson, 510 F.3d at 48. Under the prima facie standard, the district court considers "only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential

3

to personal jurisdiction." <u>Boit</u>, 967 F.2d at 675. The court does not act as fact-finder and instead adduces "the facts from the pleadings and the parties' supplementary filings, including affidavits, taking facts affirmatively alleged by plaintiff as true and construing disputed facts in the light most hospitable to plaintiff." <u>Ticketmaster-New York, Inc. v. Alioto</u>, 26 F.3d 201, 203 (1st Cir. 1994); <u>see also</u> <u>Sawtelle v. Farrell</u>, 70 F.3d 1381, 1385-87 (1st Cir. 1995); <u>Boit</u>, 967 F.2d at 675.

As defendant agrees, the <u>prima</u> <u>facie</u> standard is appropriate in the instant case. There is conflicting evidence, but the record is not so rife with contradictions that a standard higher than <u>prima</u> <u>facie</u> should apply. <u>See</u> <u>General Contracting & Trading Co. v. Interpole, Inc.</u>, 899 F.2d 109, 115 (1st Cir. 1990); <u>see also</u> <u>Landmark Bank v. Machera</u>, 736 F. Supp. 375, 380 n.7 (D. Mass. 1990). Accordingly, the court is utilizing the <u>prima</u> <u>facie</u> standard. <u>See</u> <u>Daynard</u>, 290 F.3d at 51.

Under the <u>prima</u> <u>facie</u> standard, "to establish personal jurisdiction [a] plaintiff must go beyond the pleadings and make affirmative proof." <u>Chlebda v. H.E. Fortna & Bro., Inc.</u>, 609 F.2d 1022, 1024 (1st Cir. 1979). Such an affirmative showing must be based on documents and affidavits. They must indicate that the defendant is subject to the jurisdiction of the court under the long-arm statute of the state in which the court sits, as "a federal court exercising diversity jurisdiction 'is the functional

equivalent of a state court sitting in the forum state.'" <u>Sawtelle</u>, 70 F.3d at 1387 (quoting <u>Ticketmaster-New York</u>, 26 F.3d at 204). The court must also determine whether exercising jurisdiction comports with the Fourteenth Amendment's Due Process Clause. <u>See id.</u>

B. <u>Long-Arm Statute and Due Process</u>

Because Lindsay is not alleged to have been a resident of Massachusetts, to own property here, or to have otherwise consented to this court's jurisdiction, personal jurisdiction is only appropriate if the defendant falls within the Massachusetts long-arm statute, Mass. G. L. c. 223A, §3, and exercising jurisdiction comports with the requirements of the Due Process Clause. <u>See</u> <u>Evans Cabinet Corp. v. Kitchen Int'l, Inc.</u>, 593 F.3d 135, 146 (1st Cir. 2010); <u>Nowak v. Tak How Inv., Ltd.</u>, 94 F.3d 708, 712 (1st Cir. 1996); <u>Newman</u>, 700 F. Supp. 2d at 162-63.

The Massachusetts long-arm statute provides that a "court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's . . . transacting any business in this commonwealth[.]" Mass. G. L. c. 223A, §3(a). "For jurisdiction to exist under Section 3(a), the facts must satisfy two requirements - the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." <u>Tatro v. Manor Care, Inc.</u>, 416 Mass.

763, 767 (1994) (citing Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 10 n.17 (1979)). "[G]enerally the purposeful and successful solicitation of business from residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." Id. at 767. The defendant need not have had any physical presence in Massachusetts. See Energy Capital & Services LP, II v. Hill Refrigeration, Inc., 989 F. Supp. 353, 355 (D. Mass. 1997); Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) (jurisdiction "may not be avoided merely because the defendant did not physically enter the forum State"); see also Tatro, 416 Mass. at 768. Section 3(a) also "does not require that the business transacted have taken place within the physical bounds of the commonwealth[.]" Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 932 (1st Cir. 1985) (citing Good Hope Indus., 378 Mass. at 10).

Because the Massachusetts Supreme Judicial Court has interpreted the state's long-arm statute to extend to the limits permitted by the United States Constitution, the court "may sidestep the statutory inquiry and proceed directly to the constitutional analysis." Evans Cabinet Corp., 593 F.3d at 146 (quoting Daynard, 290 F.3d at 52); Newman, 700 F. Supp. 2d at 163. The "transacting business" requirement of the Massachusetts long-arm statute thus merges with the constitutional due process analysis. See Cambridge Literary Props., Ltd. v. W. Goebel

<u>Porzellanfabrik G.m.b.H.</u>, 295 F.3d 59, 63 (1st Cir. 2002).

The Due Process Clause requires that the defendant have sufficient "minimum contacts" with a forum so that subjecting him to that forum's jurisdiction will not offend the "traditional notions of fair play and substantial justice." <u>United Elec. Workers v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1087 (1st Cir. 1992) ("<u>Pleasant Street I</u>") (quoting <u>Int'l Shoe Co. v. Washington</u>, 325 U.S. 310, 316 (1945)). Under the "minimum contacts" analysis, the two recognized types of personal jurisdiction are "general" and "specific" jurisdiction:

> General jurisdiction exists when the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state. . . . Specific personal jurisdiction may be asserted where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.

<u>Id.</u> at 1088-89. It is undisputed that the court does not have general jurisdiction over Lindsay.

There are three distinct inquiries necessary to establish specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

<u>Id.</u> at 1089. The "gestalt factors" address the fairness of

subjecting the defendant to the jurisdiction of the forum state by evaluating:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Nowak, 94 F.3d at 717.

III. FACTS

Based on the documents and affidavits submitted by plaintiff, the relevant facts, construed in the light most hospitable to the plaintiff, are as follows. See Ticketmaster-New York, 26 F.3d at 203.

Lindsay was an officer and director of MIV from 1999 until at least 2010. See Aff. of Alan P. Lindsay ¶¶9-10 ("Lindsay Aff."). He was president, chairman of the board and chief executive officer ("CEO") from approximately October 2001 until December 31, 2007, and remained on the board as a non-executive chairman until February 2010. See id. According to the plaintiff, even after stepping down as an officer of MIV, Lindsay retained pervasive control of MIV's operations, with ultimate decision-making authority over matters such as intellectual property, licensing, business development, financing and general operational management. See Aff. No. 2 of John A. Rissman, ¶25 ("Rissman Aff.").

Rissman is a law firm based in Massachusetts. Its primary

offices are in Massachusetts, and its attorneys are licensed to practice law in that state. See Compl. ¶¶1, 8; Rissman Aff. ¶3(a).

Rissman attorneys were invited to meet with MIV representatives in Paris, France on May 18, 2006, to discuss MIV's possible engagement of the firm. See Rissman Aff. ¶¶3(c), 4, 4(c). This meeting occurred when Lindsay was president, CEO, and chairman of the board at MIV, and Lindsay personally attended and actively participated in the entire initial meeting. See id. ¶3(c), 4(b); see also Lindsay Aff. ¶9.[1] At this meeting, Rissman's qualifications and terms of engagement were discussed, as was the fact that most of Rissman's legal services would be performed in Massachusetts. See Rissman Aff. ¶¶1, 3(c), 3(d). Rissman was formally engaged by McGowan, MIV's executive vice president and chief financial officer, on June 27, 2006. See id. ¶5; Compl. Ex. A.

During the course Rissman's work for MIV, Lindsay discussed various legal matters with Rissman attorneys, and also instructed Rissman attorneys to perform a variety of legal services for MIV. See Rissman Aff. ¶¶3(a), 9-11, 14-15. Lindsay requested that Rissman attorneys attend dozens of meetings, either by telephone or

---

[1] Lindsay denies that he was at this meeting. See Lindsay Aff. ¶15. For the purposes of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), however, properly supported facts alleged by plaintiff are taken as true and disputed facts are construed in the "light most hospitable to plaintiff." Ticketmaster-New York, 26 F.3d at 203; see also Sawtelle, 70 F.3d at 1385-87; Boit, 967 F.2d at 675.

in-person at locations besides Rissman's offices. See id. ¶¶3(a), 9-11, 14-15, Exs. C-D. The defendant also emailed with attorneys at the firm multiple times on a variety of business matters. See id. ¶25 & Exs. C-D, H. Many of these communications were made to lawyers in Rissman's Massachusetts office. See id. ¶¶9-10. Lindsay was also primarily responsible for requesting the intellectual property services provided by Rissman to MIV. See id. ¶¶3(b), 12. More than fifty percent of the unpaid fees and disbursements at issue were incurred at the specific request and authorization of Lindsay. See id. ¶¶3(b), 3(e), Exs. C-D. Most of Rissman's intellectual property services, besides attending remote meetings, were performed at Rissman's offices in Massachusetts. See id. ¶8.

Rissman is owed $416,309.00 for legal fees and expenses provided to MIV between May 29, 2008 and February 7, 2011. See Compl. ¶19. Rissman repeatedly contacted MIV representatives between 2008 and 2011 seeking payment, and Lindsay and other MIV officials represented that payment would be forthcoming, both by telephone and email. See Rissman Aff. ¶¶24, 26.

IV. ANALYSIS

    A. Jurisdiction Over Officers, Directors and Employees

    It is undisputed that the contacts involved in this case are sufficient to establish personal jurisdiction over defendant MIV. MIV's contacts in soliciting Rissman's business, engaging it to provide legal services for MIV, and repeatedly reaching into the

state to request services be performed there are sufficient to establish personal jurisdiction under the Massachusetts long-arm statute and the Due Process Clause. See Nowak, 94 F.3d at 715; Tatro, 416 Mass. at 767.

However, as the Supreme Court has stated, "[j]urisdiction over an employee does not automatically follow from jurisdiction over the corporation which employs him[.]" Keeton v. Hustler Magazine, Inc., 465 U.S. 770, 781 n.13 (1984). On the other hand, "status as [an] employee[] does not somehow insulate [that individual] from jurisdiction. Each defendant's contacts with the forum State must be assessed individually." Calder v. Jones, 465 U.S. 783, 790 (1984). The question of personal jurisdiction over an individual, therefore, rests on whether there is an independent basis for jurisdiction based on an individual's actions, regardless of the capacity in which those actions were taken. See Keeton, 465 U.S. at 781 n.13; Calder, 465 U.S. at 790; M-R Logistic, LLC v. Riverside Rail, LLC, 537 F. Supp. 2d 269, 279-80 (D. Mass. 2008); Interface Group-Mass., LLC v. Rosen, 256 F. Supp. 2d 103, 105 (D. Mass. 2003); Yankee Group, Inc. v. Yamashita, 678 F. Supp. 20, 22 (D. Mass. 1988); see also Pettengill v. Curtis, 584 F. Supp. 2d 348, 358 (D. Mass. 2008).

Lindsay nevertheless contends that this court cannot exercise personal jurisdiction over him because any actions that would otherwise confer personal jurisdiction were undertaken solely in

his role as a MIV board member. This argument is commonly referred to as the "fiduciary shield" doctrine, which "holds that acts performed by a person in his capacity as a corporate fiduciary may not form the predicate for the exercise of jurisdiction over him in his individual capacity." Johnson Creative Arts, Inc. v. Wool Masters, Inc., 573 F. Supp. 1106, 1111 (D. Mass. 1983); see also LaForest v. Ameriquest Mortg. Co., 383 F. Supp. 2d 278, 284-85 (D. Mass. 2005); LaVallee v. Parrot-Ice Drink Prods. of America, Inc., 193 F. Supp. 2d 296, 301 (D. Mass. 2002). The doctrine is not constitutionally based, but rather is a judicially-created equitable principle based on "judicial inference as to the intended scope of state long-arm statutes." Johnson Creative Arts, 573 F. Supp. at 1111; see also LaForest, 383 F. Supp. 2d at 284-85; LaVallee, 193 F. Supp. 2d at 301.

No Massachusetts court has adopted the fiduciary shield doctrine, and courts in the First Circuit do not recognize the doctrine as a limitation on the Massachusetts long-arm statute. See LaForest, 383 F. Supp. 2d at 284-85; Interface Group-Mass., 256 F. Supp. 2d at 105; Trans Nat'l Travel, Inc. v. Sun Pac. Int'l Inc., 10 F. Supp. 2d 79, 83 (D. Mass. 1998); Yankee Group, 678 F. Supp. at 22; Johnson Creative Arts, 573 F. Supp. at 1111; Morris v. UNUM Life Ins. Co. of America, 66 Mass. App. Ct. 716, 720 n.7 (2006); cf. M-R Logistic, 537 F. Supp. 2d at 279-80; LaVallee, 193 F. Supp. 2d at 300-02; Haddad v. Taylor, 32 Mass. App. Ct. 332, 335-37

(1992); <u>Kleinerman v. Morse</u>, 26 Mass. App. Ct. 819, 824 (1989).

In view of the foregoing, the court finds that Lindsay's status as a corporate officer and director does not insulate him from personal jurisdiction. Rather, the court must analyze the question of jurisdiction based on Lindsay's personal contacts with Massachusetts.

B. <u>Lindsay's Contacts with Massachusetts</u>

It is undisputed that Lindsay was never physically present in Massachusetts. However, Lindsay was an active participant in soliciting and engaging Rissman to perform legal services for MIV. He was president, CEO, and chairman of the board of MIV when Rissman's contract with MIV was drafted and signed. <u>See</u> Rissman Aff. ¶5; Lindsay Aff. ¶¶9-10; Compl. Ex. A. In these capacities, he was present at and helped evaluate Rissman's qualifications at the initial meeting in France, and he participated in discussing the financial terms of Rissman's engagement. Lindsay also knew that the firm was based in Massachusetts. <u>See</u> Rissman Aff. ¶¶1, 3(c)-3(d), 4(b)-(c).

In addition, Lindsay initiated and participated in many discussions with Rissman attorneys who were in Massachusetts while Lindsay was elsewhere. <u>See</u> <u>id.</u> ¶¶3(a), 3(e), 9. Lindsay directed that services be provided by Rissman which foreseeably were to be performed in Massachusetts, the location of the firm's offices. <u>See</u> <u>id.</u> ¶¶8-9. Lindsay also sent emails to Rissman attorneys in

Massachusetts. See id. ¶9. In addition, Lindsay requested that Rissman attorneys in Massachusetts attend meetings at MIV facilities in other states either in person or by telephone. See id. ¶¶7, 10, 13, 15.

C. Due Process

As explained earlier, the three inquiries necessary to establish specific personal jurisdiction under the "minimum contacts" analysis are: (1) whether the claim underlying the litigation directly arises out of or relates to the defendant's forum-state activities; (2) whether the defendant purposefully availed himself of the privilege of conducting activities in the forum state; and (3) whether the exercise of jurisdiction is reasonable in light of the "gestalt factors." See Pleasant Street I, 960 F.2d at 1087, 1089.

1. Relatedness

The standard enumerated by the First Circuit for determining whether a claim "arises out of" or is "related to" the defendant's activities within the forum state lies somewhere between a "but for" and a "proximate cause" test. Nowak, 94 F.3d at 713. Plaintiff has presented a prima facie case that Lindsay's alleged actions were a but-for or proximate cause of the plaintiff's injury. Had Rissman not been hired to provide legal services for MIV, a decision that Lindsay was directly involved in as CEO, president and chairman of the board of MIV, it would not have been injured by

the eventual failure to be paid for the services it rendered. Similarly, many of the of the legal services that Rissman provided to MIV were performed at the request or authorization of Lindsay.

Moreover, Rissman's claims are most fundamentally for breach of contract. The Supreme Court has held that "[i]t is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with [the forum] State." McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957); see also Burger King, 471 U.S. at 478-79 (for purpose of minimum contacts analysis in contract cases, "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" are factors be considered); Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 290 (1st Cir. 1999) (same). Rissman was hired to perform legal services for MIV following a meeting where Lindsay was told that the firm was located in Massachusetts and that legal services would be provided there. Much of the work requested by Lindsay under the contract was performed in Massachusetts at Rissman's offices, including legal services relating to intellectual property, and attending meetings and conferences by telephone. These facts are sufficient to establish a prima facie case that the contract between Rissman and MIV, as negotiated by Lindsay, had a "substantial connection" with Massachusetts. See id. Accordingly, plaintiff has satisfied the relatedness requirement of due process.

ii. <u>Purposeful Availment</u>

The second requirement for satisfying due process for the purpose of establishing personal jurisdiction is a showing that a defendant purposefully availed himself "of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's court foreseeable." <u>Nowak</u>, 94 F.3d at 712-13. In assessing purposeful availment, the "focus is on whether a defendant has 'engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable.'" <u>Sawtelle</u>, 70 F.3d at 1391 (quoting <u>Rush v. Savchuk</u>, 444 U.S. 320, 329 (1980)). The court looks to the voluntariness of the defendant's contacts with the forum and the foreseeability that he would be subject to a lawsuit there. <u>Id.</u> at 1391-94. "The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state[.]" <u>Nowak</u>, 94 F.3d at 716 (quoting <u>Sawtelle</u>, 70 F.3d at 1391).

Lindsay asserts that the legal business his company solicited from Rissman could have been completed anywhere and, therefore, that he did not purposefully avail himself of the privilege of conducting business in Massachusetts. This argument is unpersuasive. Although the legal services contract between MIV and Rissman was not negotiated or executed in Massachusetts, the

16

plaintiff's legal practice was located in Massachusetts, a fact that was known to Lindsay when he participated in MIV's engagement of Rissman. Moreover, Lindsay repeatedly sought advice and legal services from Rissman attorneys in Massachusetts throughout the course of Rissman's retention by MIV. These contacts were not "random, isolated or fortuitous." Id. Accordingly, Rissman has made a prima facie showing that Lindsay purposefully availed himself of the forum state and should have foreseen that he would be subject to suit in Massachusetts.

### iii. The Gestalt Factors

The final prong of the personal jurisdiction inquiry involves consideration of the fairness of subjecting the defendant to jurisdiction in light of the "gestalt factors," which are:

> (1) the defendant's burden of appearing, (2) the forum
> state's interest in adjudicating the dispute, (3) the
> plaintiff's interest in obtaining convenient and
> effective relief, (4) the judicial system's interest in
> obtaining the most effective resolution of the
> controversy, and (5) the common interests of all
> sovereigns in promoting substantive social policies.

Nowak, 94 F.3d at 717 (citing Pleasant Street I, 960 F.2d at 1088); see also Burger King, 471 U.S. at 474-75. The gestalt factors "aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak, 94 F.3d at 717. The court uses a sliding scale when assessing these factors:

> "[T]he weaker the plaintiff's showing on the first two
> prongs (relatedness and purposeful availment), the less
> a defendant need show in terms of unreasonableness to
> defeat jurisdiction." The reverse is equally true: a

strong showing of reasonableness may serve to fortify a
more marginal showing of relatedness and purposefulness.

<u>Nowak</u>, 94 F.3d at 717 (quoting and citing <u>Ticketmaster-New York</u>, 26
F.3d at 210).

With regard to the first factor, burden, "jurisdictional rules
may not be employed in such a way as to make litigation 'so gravely
difficult and inconvenient' that a party unfairly is at a 'severe
disadvantage' in comparison to his opponent." <u>Burger King</u>, 471 U.S.
at 479 (quoting <u>The Bremen v. Zapata Off-Shore Co.</u>, 407 U.S. 1, 18
(1972)). The Supreme Court has explained that "[t]he unique burdens
placed upon one who must defend oneself in a foreign legal system
should have significant weight in assessing the reasonableness of
stretching the long arm of personal jurisdiction over national
borders." <u>Asahi Metal Indus. Co. v. Superior Ct. of Cal.</u>, 480 U.S.
102, 114 (1987). If the plaintiff establishes minimum contacts,
however, this "will justify even the serious burdens placed on the
alien defendant." <u>Id</u>.

Lindsay contends that defending this suit in Massachusetts
would place significant financial and logistical burdens on him, as
he is a resident of the Cayman Islands and has no connection to
Massachusetts. <u>See</u> Lindsay Aff. ¶1. However, Lindsay has lived in
California and Canada, has been able to move to the Cayman Islands,
and did business on behalf of MIV in various areas of the United
States and other countries. <u>See</u> Cohen Aff. ¶¶4, 7; Lindsay Aff.
¶¶1-3; Rissman Aff. ¶¶3(c), 7, 10, 13(a). Therefore, the court is

not persuaded that litigation in Massachusetts would be so "gravely difficult and inconvenient" that it would put Lindsay at a "severe disadvantage" in comparison to his opponent. Burger King, 471 U.S. at 478. The first gestalt factor thus weighs slightly in favor of jurisdiction.

The second factor involves determining the forum state's interest in adjudicating the dispute. See Nowak, 94 F.3d at 717. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." Burger King, 471 U.S. at 473 (quoting McGee, 355 U.S. at 223). Massachusetts has a strong interest in seeing that its citizens get paid for services performed in the Commonwealth for citizens of other states or nations.

The third factor gives deference to the plaintiff's choice of forum. See Nowak, 94 F.3d at 717. Rissman sued in Massachusetts, where it is based and where it engages in the practice of law.

The fourth factor, "the judicial system's interest in obtaining the most effective resolution of the controversy" is usually "a wash." Id. at 717-18. However, as Lindsay now lives in the Cayman Islands, it is not clear that there is a feasible alternative to litigating this dispute in Massachusetts. This fact weighs in favor of exercising jurisdiction.

The final gestalt factor requires consideration of "the common interests of all sovereigns in promoting substantive social

policies." <u>Sawtelle</u>, 70 F.3d at 1394. In the instant case, "the most prominent policy implicated is the ability of a state to provide a convenient forum for its residents to redress injuries inflicted by out-of-forum actors," which takes on "added importance in our age of advanced telecommunications" when a firm can easily represent "geographically distant clients" without meeting them in person or traveling outside the state. <u>Id.</u> at 1395. This factor, too, weighs in favor of exercising jurisdiction in Massachusetts.

Accordingly, the court finds that the "gestalt factors" weigh in favor of Massachusetts as a fair forum. Viewed in conjunction with the plaintiff's showings as to relatedness and purposeful availment, the court concludes that the exercise of jurisdiction in Massachusetts "is reasonable and does not offend the notions of fair play and substantial justice." <u>Nowak</u>, 94 F.3d at 719.

The facts of the instant case are analogous to others in which personal jurisdiction has been found to exist over corporate officers. For example, in <u>Trans National Travel, Inc. v. Sun Pacific International, Inc.</u>, the district court determined that jurisdiction existed over the president of a company where the corporate defendant had negotiated a contract with the plaintiff and had failed to perform the contract, and where the president's contacts with the forum were comprised solely of telephone calls, letters, and facsimiles "made and sent on behalf" of the corporate defendant. 10 F. Supp. 2d at 83-84. Similarly, in <u>Johnson Creative</u>

Arts, Inc. v. Wool Masters, Inc., the district court concluded that jurisdiction existed over the president and CEO of a company in New York where the individual composed and mailed business solicitations into Massachusetts, and also accepted telephone orders from Massachusetts. See 573 F. Supp. at 1111-12. The court concludes, therefore, that plaintiff has established that personal jurisdiction over Lindsay exists based on his personal actions. Defendant's Motion to Dismiss for lack of personal jurisdiction is, therefore, being denied.

V. SERVICE

Defendant also asserts that plaintiff's claims should be dismissed for insufficient service of process. See Fed. R. Civ. P. 12(b)(5). Faced with a Rule 12(b)(5) challenge, the burden of proof to establish proper service rests on the plaintiff. See Saez Rivera v. Nissan Mfg. Co., 788 F.2d 819, 822 n.2 (1st Cir. 1986).

Federal Rule of Civil Procedure 4(e)(1) provides that an individual "may be served in a judicial district of the United States by . . . following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." See also Blair v. City of Worcester, 522 F.3d 105, 110 (1st Cir. 2005). Massachusetts Rule of Civil Procedure 4(e) applies to service outside of Massachusetts, and permits service upon an individual "as directed by order of the court." Mass. R. Civ. P. (4)(e)(5).

In the instant case, prior to removal to this court, plaintiff sought state court approval to serve the defendant by alternative means. Specifically, plaintiff sought approval of service by Federal Express ("FedEx") to Lindsay's last known address and/or by email with a receipt confirmation. See Aff. of Alan M. Cohen ¶3 & Ex. A ("Cohen Aff."). The motion specifically referenced Lindsay's last known address in Canada, which Lindsay describes in his affidavit as his residence until October 2010. See id. Ex. A ¶3; Lindsay Aff. ¶2. On April 13, 2011, the Superior Court allowed the motion, ordering that service be made by both FedEx and email (the "State Court Order"). See Cohen Aff. Ex. A; State Court Record at 132.

The record indicates that plaintiff satisfied the service requirements set forth in the State Court Order. On April 8, 2011, plaintiff served defendant by FedEx at his last known address in Canada. See Cohen Aff. ¶4, Ex. B; State Court Record at 160-61. On April 11, 2011, the FedEx package was accepted and signed for at that address. See Cohen Aff. ¶4, Ex. B; State Court Record at 162. On April 11, 2011, plaintiff also served the defendant by email and received confirmation of receipt. See Cohen Aff. ¶5, Exs. C-D; State Court Record at 163-64. As service was properly effectuated pursuant to the State Court Order, the plaintiff has met its burden of establishing that service of process was proper. See Mass. R.

Civ. P. 4(e)(5); Fed. R. Civ. P. 4(e)(1); <u>see also</u> <u>Blair</u>, 522 F.3d at 110.

In addition to complying with the State Court Order, on April 12, 2011, plaintiff had a process server serve the defendant at his last known address in California. <u>See</u> Cohen Aff. ¶¶7-8, Ex. E. In view of the fact that proper service was made pursuant to the State Court Order, it does not matter whether this service was sufficient. It does, however, represent a good faith effort by the plaintiff to provide notice to the defendant as due process requires. <u>See</u> <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."); <u>Jones v. Flowers</u>, 547 U.S. 220, 226 (2006) (stating notice deemed constitutionally sufficient if it was reasonably calculated to reach the intended recipient when sent).

In any event, because Rissman complied with the State Court Order and served the defendant both by email and at his last known addresses in Canada, this court finds that service was proper.

VI. ORDER

In view of the foregoing, it is hereby ORDERED that:

1.   Defendant's   Motion   to   Dismiss   for   Lack   of   Personal
Jurisdiction and Improper Service (Docket No. 25) is DENIED.

2. Plaintiff's Motion to Stay the Time to Respond to Defendant
Alan Lindsay's Motion to Dismiss Until After Plaintiff Has Had the
Opportunity to Conduct Limited Discovery On the Issue of Personal
Jurisdiction   Over   Defendant   Alan   P.   Lindsay   (Docket   No.   33)   is
MOOT.

3. Lindsay shall answer the Complaint by October 31, 2012.

4. A Scheduling Conference shall be held on November 19, 2012,
at 4:00 p.m. The parties shall respond to the attached Notice of
Scheduling Conference.


                    /s/ Mark L. Wolf
            UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

**RISSMAN HENDRICKS & OLIVERIO,
LLP,**

        **Plaintiff,**

                                                      **CIVIL ACTION**

**V**                                              **NO. 11-10791-MLW**

**MIV THERAPEUTICS INC., et al.,**
               **Defendants,**

NOTICE OF SCHEDULING CONFERENCE

An initial scheduling conference will be held in Courtroom No.   10   on the   5th   floor at   4:00  p.m. on  November 19, 2012
in accordance with Fed. R. Civ. P. 16(b) and Local Rule 16.1.  The court considers attendance of the senior lawyers ultimately
responsible for the case and compliance with sections (B), (C), and (D) of Local Rule 16.1[1] to be of the utmost importance.  Counsel
may be given a continuance only if actually engaged on trial.  Failure to comply fully with this notice and with sections (B), (C), and
(D) of Local Rule 16.1 may result in sanctions under Local Rule 1.3.  Counsel for the plaintiff is responsible for ensuring that all parties
and/or their attorneys, who have not filed an answer or appearance with the court, are notified of the scheduling conference date.

September 28, 2012                                   /s/ Mark L. Wolf
Date                                               United States District Judge
                                  By:    /s/ Daniel C. Hohler

---

[1] These sections of Local Rule 16.1 provide:

    (B) Obligation of counsel to confer.  Unless otherwise ordered by the judge, counsel for the parties shall, pursuant to
Fed.R.Civ.P. 26(f), confer no later than twenty-one (21) days before the date for the scheduling conference for the purpose of:

        (1) preparing an agenda of matters to be discussed at the scheduling conference,

        (2) preparing a proposed pretrial schedule for the case that includes a plan for discovery, and

        (3) considering whether they will consent to trial by magistrate judge.

    (C) Settlement proposals.  Unless otherwise ordered by the judge, the plaintiff shall present written settlement proposals
to all defendants no later than twenty-one (21) days before the date for the scheduling conference.  Defense counsel shall have
conferred with their clients on the subject of settlement before the scheduling conference and be prepared to respond to the
proposals at the scheduling conference.

    (D) Joint statement.  Unless otherwise ordered by the judge, the parties are required to file, no later than five (5) business
days before the scheduling conference and after consideration of the topics contemplated by Fed.R.Civ.P. 16(b) and 26(f), a joint
statement containing a proposed pretrial schedule, which shall include:

        (1) a joint discovery plan scheduling the time and length for all discovery events, that shall

                (a) conform to the obligation to limit discovery set forth in Fed. R. Civ. P. 26(b), and
                (b) take into account the desirability of conducting phased discovery in which the first phase
                is limited to developing information needed for a realistic assessment of the case and, if the
                case does not terminate, the second phase is directed at information needed to prepare for
                trial; and
        (2) a proposed schedule for the filing of motions; and
        (3) certifications signed by counsel and by an authorized representative of each party affirming that each party and that
party's counsel have conferred:
                (a) with a view to establishing a budget for the costs of conducting the full course--and
                various alternative courses--of the litigation; and
                (b) to consider the resolution of the litigation through the use of alternative dispute resolution
                programs such as those outlined in Local Rule 16.4.
    To the extent that all parties are able to reach agreement on a proposed pretrial schedule, they shall so indicate.  To the extent
that the parties differ on what the pretrial schedule should be, they shall set forth separately the items on which they differ and indicate
the nature of that difference.  The purpose of the parties' proposed pretrial schedule or schedules shall be to advise the judge of the
parties' best estimates of the amounts of time they will need to accomplish specified pretrial steps.  The parties' proposed agenda for
the scheduling conference, and their proposed pretrial schedule or schedules, shall be considered by the judge as advisory only.

(16b-notice-1.wpd - 12/00)                                       [ntchrgcnf.  schedcnfddl.]